IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ROZALIA KOTACK, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. H-05-2427 |
| | § | |
| JO ANNE BARNHART, | § | |
| COMMISSIONER OF THE | § | |
| SOCIAL SECURITY | § | |
| ADMINISTRATION, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Before the Magistrate Judge[1] in this social security appeal is Plaintiff's Motion for Summary Judgment and Supporting Brief (Document No. 9), Defendant's Motion for Summary Judgment (Document No. 10), and Defendant's Response to Plaintiff's Brief and in Support of Defendant's Motion for Summary Judgment (Document No. 11). Having considered the cross motions for summary judgment, the administrative record, and the applicable law, the Magistrate Judge ORDERS, for the reasons set forth below, that Defendant's Motion for Summary Judgment (Document No. 10) is GRANTED, Plaintiff's Motion for Summary Judgment (Document No. 9) is DENIED, and the decision of the Commissioner is AFFIRMED.

---

[1] The parties consented to proceed before the undersigned Magistrate Judge on October 5, 2005. (Document No. 8)

**I.  INTRODUCTION**

Plaintiff Rozalia C. Kotack ("Kotack") brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security Administration ("Commissioner") denying her application for disability insurance benefits.  Kotack claims that substantial evidence does not support the Administrative Law Judge's ("ALJ") decision, and that the ALJ, Janis Estrada, committed errors of law in assessing Kotack's residual functional capacity ("RFC").  Specifically, Kotack contends that the ALJ's determination that Kotack could perform sedentary work is not supported by substantial medical evidence.  According to Kotack, the ALJ did not apply the appropriate legal standard in weighing the opinion of Kotack's treating physician, Dr. Stafford.  Plaintiff further argues that because she is unable to perform her past relevant work as a hospital admitting clerk, the ALJ should have applied the medical-vocational guideline rule 201.02 as set forth by Social Security Regulations to aid her decision.  Kotack, moves for an order reversing the decision of the ALJ and awarding disability benefits.  The Commissioner responds that there is substantial evidence to support the ALJ's decision, that it comports with applicable law, and that it should therefore be affirmed.

**II.  ADMINISTRATIVE PROCEEDINGS**

On May 13, 2003, Kotack applied for disability insurance benefits and supplemental security income benefits, claiming that she had been unable to work since February 1, 2001, due to a right shoulder condition, a degenerative disc condition of the spine, and pain in her knee and thumb. (Tr. 12, 61-63, 66, 291-93).  The Social Security Administration denied Kotack's application both initially and after reconsideration. (Tr. 23-37).  Kotack then requested a hearing before an ALJ, which took place on November 19, 2004. (Tr. 38, 303-46).  The ALJ determined that Kotack met

the insured status requirement for disability insurance as shown by her earnings records. (Tr. 12, 64-65).

At step one, the ALJ found that Kotack "has not engaged in substantial gainful work since the alleged onset date of disability." (Tr. 19). At step two, the ALJ found that Kotack's impairments of arthroscopic surgery of the right shoulder, obesity, tear of the left medial meniscus, narrowing of the L5-S1 disc space, and instability of the metacarpal phalangeal joint, were in fact severe impairments. *Id.* However, at step three, the ALJ determined that while these impairments were severe, they did not "meet or equal in severity the requirements of any of the medical listings in Appendix 1, Subpart P, Regulations No. 4." *Id.*

Based on the medical records, Kotack's testimony, the testimony of the two medical experts, and the testimony of the vocational expert, the ALJ concluded that Kotack had the residual functional capacity ("RFC") to perform sedentary work.[1] (Tr. 18). With these limitations, the ALJ concluded, at step four, that Kotack could perform her past relevant work as a hospital admitting clerk, and that she was therefore not disabled within the meaning of the Act. *See Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992).

Kotack then sought review of the ALJ's decision with the Appeals Council, but the Appeals Council denied the request, thus making the ALJ's determination final. (Tr. 4-8). Kotack has timely filed her appeal of the ALJ's decision. 42 U.S.C. § 405(g) (2006). Plaintiff has filed a Motion for Summary Judgment and Supporting Brief (Document No. 9). Likewise, the Commissioner has filed a Motion for Summary Judgment (Document No. 10), and a Response to Plaintiff's Brief and in Support of Defendant's Motion for Summary Judgment (Document No. 11). This appeal is now ripe

---

[1] Sedentary work is defined as work that involves lifting ten pounds maximum, sitting up to six hours a day and occasionally standing. 20 C.F.R. §§ 404.1567(b), 416.967(b) (2006).

for ruling. The evidence is set forth in the transcript pages 1 – 346 (Document No. 7). There is no dispute as to the facts contained therein.

### III. STANDARD OF REVIEW OF AGENCY DECISION

The court's review of a denial of disability benefits is limited "to determining (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner's decision comports with relevant legal standards." *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999). The Social Security Act limits judicial review of the commissioner's decision, stating: "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g) (2006). The Act specifically grants the district court the power to enter judgment, upon the pleadings and transcript, "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing" when not supported by substantial evidence. *Id.* It is incumbent upon the court to examine the record in its entirety to decide whether the decision is supportable. *See Simmons v. Harris*, 602 F.2d 1233, 1236 (5th Cir. 1979). Yet, the court may not "reweigh the evidence in the record, nor try the issues *de novo*, nor substitute [its] judgment for that of the [Commissioner] even if the evidence preponderates against the [Commissioner's] decision." *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988); *Jones*, 174 F.3d at 693; *Cook v. Heckler*, 750 F.2d 391, 392-93 (5th Cir. 1985). Conflicts in the evidence are for the Commissioner to resolve. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992).

The U.S. Supreme Court has defined "substantial evidence," as used in the Act, to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence is "more than a mere scintilla, less than a preponderance."

*Hames v. Heckler*, 707 F.3d 162, 164 (5th Cir. 1983); *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993). The evidence must create more than "a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Hames*, 707 F.2d at 164.

### IV.  BURDEN OF PROOF

An individual claiming entitlement to disability insurance benefits under the Act has the burden of proving her disability as defined by the Act. *Johnson*, 864 F.2d at 344. The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. 423(d)(1)(A) (2006). The impairment must be proven through medically accepted clinical and laboratory diagnostic techniques. *Id.* § 423(d)(3). The impairment must be so severe as to limit the claimant such that:

> [s]he is not only unable to do her previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [s]he lives, or whether a specific job vacancy exists for [her], or whether [s]he would be hired if [s]he applied for work.

*Id.* § 423(d)(2)(A). The mere presence of an impairment is not enough to establish that one is suffering from a disability. Rather, a claimant is disabled only if [s]he is "incapable of engaging in *any* substantial gainful activity." *Anthony*, 954 F.2d at 293 (quoting *Milam v. Bowen*, 782 F.2d 1284, 1286 (5th Cir. 1986)).

The Commissioner applies a five-step sequential process to decide disability status:

1. If the claimant is presently working, a finding of "not disabled" must be made;

2. If the claimant does not have a "severe impairment" or combination of impairments, [she] will not be found disabled;

3.  If the claimant has an impairment that meets or equals an impairment listed in Appendix 1 of the Regulations, disability is presumed and benefits are awarded;

4.  If the claimant is capable of performing past relevant work, a finding of "not disabled" must be made; and

5.  If the claimant's impairments prevent [her] from doing any other substantial gainful activity, taking into consideration [her] age, past work experience, and residual functional capacity, [she] will be found disabled.

20 C.F.R. 404.1520(a)(4) (2006); *Anthony*, 954 F.2d at 293; *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). Under this process, the claimant bears the burden of proof on the first four steps of the analysis to establish that a disability exists. *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). If successful, the burden shifts to the Commissioner, at step five, to show that the claimant can perform other work. *Id*. If the Commissioner shows that other jobs are available, the burden shifts back to the claimant to rebut this finding. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). If, at any step in the process, the Commissioner determines that the claimant is or is not disabled, the evaluation ends. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987); *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

Relying on the medical records and testimony of both the medical experts and the vocation expert, the ALJ determined that Kotack was capable of performing sedentary work. (Tr. 18) The ALJ then determined that Kotack's former job as an admitting clerk qualified as sedentary work. *Id.* Based on her determination that Kotack had the residual functional capacity to perform sedentary work, the ALJ concluded that she also had the residual functional capacity to perform her past relevant work as a hospital admitting clerk, and was thus not "disabled" within the meaning of the Act. (Tr. 19). In this appeal, the Court must determine whether substantial evidence supports the ALJ's step-four finding.

In determining whether substantial evidence supports the ALJ's decision, the court generally weighs four factors: (1) the objective medical facts; (2) the diagnosis and expert opinions of treating, examining and consultative physicians on subsidiary questions of fact; (3) subjective evidence as testified to by the plaintiff and corroborated by family and neighbors; and (4) the plaintiff's educational background, work history, and present age. *Wren*, 925 F.2d at 126.

## V.  DISCUSSION

### 1. Medical Facts

Kotack's medical history shows that in June 2002, she sought medical attention for neck pain and heartburn. (Tr. 265). Her treating physician, Dr. Laurel Tucker, also treated her for adenopathy, a swelling of the glands in her neck. *Id.* In April 2003, Kotack returned to the doctor complaining of shoulder and back pain. (Tr. 244). According to Kotack, she was unable to lift her arm above her shoulder due to the pain. *Id.* She reported that the pain had occurred on and off for the past couple of years but had been constant for the past three months. *Id.* The treating physician noted that there was "no definite weakness of [the] right arm," but that the Kotack "gets scared she may drop something because of the pain." *Id.* Because the pain did not resolve, Kotack was referred to Dr. Stafford, an orthopedic surgeon, in May of 2003. (Tr. 268). On May 7, 2003, Dr. Stafford examined Kotack and noted that the right shoulder "shows no deformity or atrophy," but that the pain was "progressive and increasingly severe, now interfering with sleep as well as activities of daily living." *Id.* Furthermore, Dr. Stafford noted that the x-rays showed a "mild narrowing of the subacromial space." *Id.* Dr. Stafford's impression was that Kotack suffered from a shoulder impingement and a possible rotator cuff tear and recommended that she undergo an MRI. (Tr. 269). At the same time, Kotack told Dr. Stafford that she was suffering from back pain, which Dr. Stafford identified as "localized tenderness to palpitation of the right lumbosacral region." *Id.* After reviewing the x-rays

of the spine, Dr. Stafford noted a "moderately advanced narrowing of the L5-S1 disc space." *Id.* Dr. Stafford later prescribed supervised therapy to help alleviate Kotack's lower back pain. (Tr. 280).

On May 15, 2003, Dr. Stafford reviewed the MRI of the shoulder, which revealed evidence of a "full thickness rotator cuff tear involving the supraspinatus." *Id.* Dr. Stafford recorded in his notes that surgery was Kotack's best option, writing, "[g]iven the patient's relatively young age and active lifestyle, it is my feeling that surgical intervention is warranted." *Id.* The surgery was performed on May 23, 2003, and Dr. Stafford conducted a surgical follow up examination on May 28, 2003. *Id.* At the follow up examination, Dr. Stafford noted that Kotack was doing reasonably well, but was still experiencing moderate pain. *Id.* Kotack was fitted with an arm sling and prescribed physical therapy three times a week as well as pain medication. (Tr. 270).

In July 2003, Kotack returned to her primary care physician, Dr. Tucker, complaining of pain in her right thumb, left knee, and lower back. (Tr. 281). She was referred again to Dr. Stafford, who prescribed a neoprene support for her thumb and performed an MRI on her left knee. *Id.* The MRI showed a tear of the medial meniscus. *Id.* Kotack considered undergoing surgery for both her knee and thumb, but no surgery has yet been performed. *Id.*

In May 2004, Kotack visited Dr. Stafford who noted her continued "steady and gradual recovery regarding her right shoulder." *Id.* In addition to her previous complaints, Kotack also stated that she had pain in her right elbow, which Dr. Stafford concluded was epincondylitis. *Id.* Kotack received cortisone injections for the pain in her elbow and thumb. *Id.*

Kotack has also received treatment for alcoholism and depression. On January 4, 2002, Kotack was admitted into the West Oaks Hospital for five days and then transferred to the chemical dependency intensive outpatient program ("DIOP") to help treat her alcohol dependence. (Tr. 108). At the time of admittance, Kotack showed signs of depression and remained isolated and quiet, with

a Global Assessment of Functioning ("GAF") score of 30. (Tr. 109, 132). Kotack was discharged from DIOP on January 29, 2002, with a GAF score of 50. (Tr. 108, 133). Kotak has remained sober since January of 2002 and has continued to take anti-depressants since being discharged from the West Oaks Hospital recovery program. (Tr. 318).

### 2. Diagnosis and Expert Opinions

The second element considered is the diagnosis and expert opinions of treating and examining physicians on subsidiary questions of fact. Unless good cause is shown to the contrary, "the opinion, diagnosis, and medical evidence of the treating physician, especially when the consultation has been over a considerable amount of time, should be accorded considerable weight." *Perez v. Schweiker*, 653 F.2d 997, 1001 (5th Cir. 1981). For the ALJ to give deference to a medical opinion, however, the opinion must be more than conclusional and must be supported by clinical and laboratory findings. *See Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985). Indeed, "[a] treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with…other substantial evidence.'" *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000)(quoting 20 C.F.R. 404.1527(d)(2)). However, the Code of Federal Regulations also allows the ALJ to weigh all available facts when a medical opinion contradicts other evidence in the record. 20 C.F.R. § 404.1527(c)(2)(2006). "'[T]he Commissioner is free to reject the opinion of any physician when the evidence supports a contrary conclusion.'" *Martinez v. Chater*, 64 F.3d 172 (5th Cir. 1995)(quoting *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987)). Furthermore, regardless of the opinions and diagnoses of medical sources, "the ALJ has sole responsibility for determining a claimant's disability status." *Martinez*, 64 F.3d at 176 (quoting *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990)).

The Social Security Regulations provide a framework for the consideration of expert medical opinions of a claimant's treating physician. Under 20 C.F.R. 404.1527(d)(2), consideration of a treating physician's opinion must be based on:

1. the physician's length of treatment of the claimant,

2. the physician's frequency of examination,

3. the nature and extent of the treatment relationship,

4. the support of the physician's opinion afforded by the medical evidence of record,

5. the consistency of the opinion with the record as a whole, and

6. the specialization of the treating physician.

While opinions of treating physicians need not be accorded controlling weight on the issue of disability, in most cases such opinions must at least be given considerable deference. *Newton*, 209 F.3d at 456. The Social Security Regulations provide guidance on this point as well. Social Security Rule 96-2p provides:

> [A] finding that a treating source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record only means that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. §§ 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to greatest weight and should be adopted, even if it does not meet the test for controlling weight.

Social Security Ruling 96-2p, 61 Fed. Reg. 34490 (July 2, 1996). With regard to the weight to be given to the Residual Functional Capacity Assessments, the Rule provides that "adjudicators must weigh medical source statements under the rules set out in 20 C.F.R. § 404.1527, providing appropriate explanations for accepting or rejecting such opinion." *Id*.

The Fifth Circuit adheres to the view that before a medical opinion of a treating physician can be rejected, the ALJ must consider and weigh the six factors set forth in 20 C.F.R. § 404.1527(d). *Newton*, 209 F.2d at 456. "The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." *Id.* at 455.

Plaintiff claims that the ALJ erred by dismissing the diagnoses of her treating physician "without giving good cause or any meaningful analysis of why the ALJ chose to do so." (Pl's. Mtn. 9). This claim is without merit. The ALJ set forth a thorough medical explanation of what constitutes a disability as defined by the Social Security Act and explained why Kotack does not meet the definition based on the objective medical evidence, expert medical opinion, and Residual Functional Capacity Assessment. (Tr. 13-20).

In her written opinion, the ALJ began by summarizing what Kotack must show in order to prove that her impairments meet the definition of disability as given in the Social Security Act. It should be noted that an individual claiming entitlement to disability insurance benefits under the Act has the burden of proving her disability. *Johnson*, 864 F.2d at 344.

Dr. Stafford, Kotack's treating physician, first saw Kotack on May 7, 2003. The notes from his first exam state, "The patient describes a chronic history of symptoms particularly involving the right shoulder, dating back over two years. This has been progressive and increasingly severe, now interfering with sleep as well as activities of daily living." (Tr. 268). Dr. Stafford was under the impression that she had a rotator cuff tear and was also suffering from non-specific lower back pain. *Id.* After reviewing an MRI of her shoulder, Dr. Stafford recommended surgery for Kotack and performed the rotator cuff repair on May 23, 2003. (Tr. 269). Four days after the surgery, Dr. Stafford noted that, while she was still experiencing pain, Kotack was doing reasonably well. *Id.* On June 4, 2003, twelve days after surgery, Dr. Stafford reported that Kotack was doing well and that she "is

making excellent progress" and that her "passive range of motion is markedly improved." (Tr. 270).

Dr. Stafford continued to see Kotack for the next year. In a memo dated May 24, 2004, he noted that Kotack had a "generally successful surgical result," but that she had complained of pain in her knees and thumb. (Tr. 286). In regards to Kotack's knee, Dr. Stafford stated that x-rays "confirm moderate narrowing of the medial joint space...and [we] are currently considering the possibility of knee anthroplasty." *Id.* He also wrote that he "may also encourage the patient to receive a second opinion from an orthopedic hand specialist regarding the possible surgical intervention to the right thumb." *Id.* There is no record of surgery having been performed on the knee or the thumb.

The ALJ noted that "there is no evidence that any of the conditions has resulted in an inability to ambulate effectively or perform fine and gross movements effectively." (Tr. 14). Instead, her treating physician stated that she was suffering from pain and had a limited range of motion. This presence of pain and impairment is not the same as being disabled. *See Hames v. Harper*, 707 F.2d 162, 166 (5th Cir. 1983)(holding that the plaintiff, to show disability, must be able to show functional impairment that precludes any substantial gainful activity). Thus, the ALJ concluded that Kotack was suffering from pain in her shoulder, as attested to by her physician, but that she was still capable of ambulating and performing fine and gross movements.

Furthermore, the ALJ relied on the testimony of an impartial medical expert in order to determine whether Kotack met the musculoskeletal disability requirements of the Act. Dr. Woodrow Janese, testified regarding Kotack's shoulder, saying "there was not enough evidence to meet a medical listing of 1.02B." (Tr. 329). He testified further that "Concerning her left knee, there was not enough medical evidence of 102A. Concerning her back, there was not enough information to meet the listing of 10[4]A, B, or C." *Id.*

With regard to Kotack's mental health, the ALJ relied on the testimony of Dr. Tarrand, an expert psychiatrist, to help determine if Kotack suffered from a mental disability. It is quite clear from the testimony of the expert witness, Dr. Tarrand, that there is no record or symptoms of any depression lasting more than two weeks, well short of the twelve month requirement necessary for disabled status. (Tr. 15, 337). After the brief hospitalization in January 2002, there are no other mental treatment records. While Kotack does continue to take anti-depressants, these medications are prescribed to her by her primary care physician, not a psychiatrist. (Tr. 337-38). In short, Dr. Tarrand testified that there was no evidence that Kotack met the definition of mentally disabled as set forth in the Act. *Id.*

Based on her thorough explanation and review of this material, it is clear that the ALJ considered the medical records and opinions of Kotack's treating physicians regarding her shoulder, knee, spine, thumb, and mental impairments. Furthermore, Dr. Stafford reported from his examination of Kotack in June of 2003, "significant improvement" and that Kotack's range of motion was "markedly improved." (Tr. 15-16, 270). For the next eleven months Kotack's shoulder continued to improve and on May 24, 2004, Dr. Stafford declared that "she had achieved a generally successful result." (Tr. 16, 285-86).

Thus, the ALJ determined that the treating physician's opinion was outweighed by other medical evidence that illustrated she was not disabled. Furthermore, the treating physician's own notes regarding Kotack's shoulder document her vast improvement in motion and toleration of pain. (Tr. 270). Furthermore, there is no evidence or medical opinion from a treating physician to support Kotack's claim of mental disability.

Thus having determined that Kotack does not suffer from an impairment listed in Appendix 1, Subpart P, Regulations No. 4, the ALJ then had to evaluate her residual functional capacity to

determine whether she could perform any past work or any other job existing in significant numbers in the national economy.

A claimant's residual functional capacity ("RFC") is the highest level of work an individual can perform despite his physical or mental limitations. 20 C.F.R. § 404.1545. In determining one's RFC, the Social Security Administration will consider medical records, claimant's testimony, consultative examinations, and testimony of family, neighbors, and friends. *Id.* Kotack argues that "[t]here is not substantial evidence of record to support the ALJ's finding that Plaintiff could perform sedentary work." (Pl's. Br. at 10). However, Plaintiff's argument that there is no evidence to support the ALJ's decision is without merit.

On June 26, 2003, Dr. Bob Dodd conducted an RFC evaluation pursuant to Kotack's application for Social Security benefits. (Tr. 272-79). Upon conducting the evaluation of Kotack's medical records, Dr. Dodd concluded that Kotack could occasionally lift twenty pounds, could frequently lift ten pounds, could stand or walk for six hours out of an eight hour work-day, and could sit about six hours in an eight hour work-day. (Tr. 273). Furthermore, Dr. Dodd's evaluation indicated that Kotack could "frequently" balance, stoop, kneel, crouch, and crawl, but that she should only "occasionally" climb stairs and should "never" climb a ladder. (Tr. 274). The evaluation went on to say that because of the generalized swelling due to surgery, Kotack's right arm had limited reaching, handling, fingering, and feeling capabilities. (Tr. 275). However, Dr. Dodd's final analysis noted the vast improvements in Kotack's shoulder, saying:

> [the medical records] revealed that she is doing well. She describes significant improvement…Client is undergoing supervised therapy and making excellent progress. Exam revealed her incisions are intact, healing well without signs of infection. Projected to rehabilitate before 5/04. Alleged limitations are supported by her and other evidence in the file but are expected to resolve before 5/2004.

(Tr. 277). Thus, the RFC assessment indicates that Kotack was able to meet the requirements of sedentary work as defined in Title 20 C.F.R. §§ 404.1567(b) and 416.967(b).

The ALJ's determination that Kotack could perform sedentary work is also supported by the testimony of Dr. Janese. In fact, Janese felt that Kotack was not only capable of sedentary work, but was "capable of functioning in a light employment requirement." (Tr. 330). Dr. Janese concluded that Kotack could perform light employment and that there were no additional environmental restrictions that should be placed on Kotack's working capabilities. *Id.*

The ALJ also relied on the testimony of Thomas King, a vocational expert, in determining Kotack's residual functional capacity. King testified as follows upon questioning by the ALJ:

> A: the claimant's past work from the record and testimony [shows] she has worked as a waitress. This would be done at a light exertional level and would be defined as semi-skilled. She also has work as a cellular pager sales person. This would be work done at a light exertional work level and would be defined as skilled work. From her testimony today she has also worked as a wine wholesale person. This would be work done on a medium exertional work level and would be defined as skilled work. And finally she has worked as an insurance clerk, this would be done at a sedentary work level and would be defined as semi-skilled work.
>
> Q: And if I find that the claimant retains the ability to function as testified here today by Dr. Janese, do you have any opinion regarding whether she will be able to perform any of her past relevant work?
>
> A: Yes, Judge. Based on Dr. Janese's (inaudible), the claimant could do all past work except the wine wholesales salesperson. (Tr. 340-41).

Both experts, Dr. Janese and Mr. King, testified that Kotack's RFC was above the sedentary work level, and that she should be considered capable of light exertional work. These two testimonies, along with the RFC assessment, conducted by Dr. Dodd, provide more than substantial evidence to support the ALJ's conclusion that Kotack's RFC was at the sedentary level.

Kotack also argues that there is not substantial evidence to support the ALJ's finding that she can perform her past work as an insurance or hospital admitting clerk. (Pl's. Br. at 15). Relevant

work experience is defined as work that 1) the claimant performed in the fifteen years prior to the determination, 2) lasted long enough for the claimant to learn how to do it, and 3) could be classified as substantial gainful activity. 20 C.F.R. § 416.965(a)(2006).

However, it is clear from the evidence that Kotack performed the job of insurance clerk within the fifteen years prior to the ALJ's decision. (Tr. 87-88). Kotack argues the ALJ employed a bright line rule "that every occupation performed in the past fifteen years is still relevant today." (Pl.'s Br. at 16). Yet, in making her decision, the ALJ relied not only on the objective facts of the case, but also upon the testimony of the vocational expert who testified that Kotack could have performed any of her past jobs except that of a wine wholesaler. (Tr. 341). The record also indicates that Kotack worked as an insurance clerk for four years, giving her sufficient time to learn how to do that type of work. (Tr. 87). In the final step for determining whether a job is past relevant work, the ALJ must determine whether the work qualifies as substantial gainful activity. Substantial gainful activity is defined as "activity that involves doing significant physical or mental activities and…it is the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. 416.972. It is noted in the records that Kotack made seven dollars an hour and over $37,000 during her four years as an insurance clerk. (Tr. 64-65, 88). It is clear that this job qualifies as substantial gainful activity.

### 3. Subjective Evidence as Testified by Plaintiff

The next element to be weighed is the subjective evidence of pain, including the claimant's testimony and corroboration by family and friends. Not all pain is disabling, and the fact that a claimant cannot work without some pain or discomfort will not render her disabled. *Cook v. Heckler*, 750, F.2d 391, 395 (5th Cir. 1985). The proper standard for evaluating pain is codified in the Social Security Disability Benefits Reform Act of 1984, 42 U.S.C. § 423. The statute provides that allegations of pain do not constitute conclusive evidence of disability. *Id.* There must be objective

medical evidence showing the existence of a physical or mental impairment which could reasonably be expected to cause pain. *Id.* Statements made by the individual or her physician as to the severity of the plaintiff's pain must be reasonably consistent with the objective medical evidence on the record. *Id.* "Pain constitutes a disabling condition under the SSA only when it is 'constant, unremitting, and wholly unresponsive to therapeutic treatment.'" *Seders*, 914 F.2d at 618-19 (citing *Darrell v. Bowen*, 837 F.2d 471, 480 (5th Cir. 1988)). Pain may also constitute a non-exertional impairment which can limit the range of jobs a claimant would otherwise be able to perform. *See Scott v. Halala*, 30 F.3d 33, 35 (5th Cir. 1994). The evaluation of evidence concerning subjective symptoms is a task particularly within the province of the ALJ, who has had the opportunity to observe the claimant. *Hams v. Heckler*, 707 F.2d 162, 166 (5th Cir. 1983).

Kotack testified that she experiences pain in her back, left knee, thumb, and shoulder. (Tr. 314-15, 320, 322-24). She stated that because of the pain she could not drive, could not sit for long periods of time, could not walk or exercise, could not cook, and could not wash her own hair. (Tr. 314-16, 320-21). After undergoing surgery Kotack's shoulder made an excellent recovery and it was noted that her "tolerance for passive range of motion is markedly improved." (Tr. 244, 270, 286). Kotack also complained of pain in her knee, thumb, and lower back. The ALJ noted that while Kotack may be suffering from some pain, there is no evidence "indicating that the claimant is precluded from performing sedentary work." (Tr. 17). In other words, while Kotack may have pain, she must prove that the pain is "constant, unremitting, and wholly unresponsive to therapeutic treatment," in order to qualify as disabled. *Seders*, 914 F.2d at 618-19 (citing *Darrell v. Bowen*, 837 F.2d 471, 480 (5th Cir. 1988)). It was the ALJ's determination that Kotack did not meet this test and was thus able to perform at sedentary level. (Tr. 16-19).

The ALJ also found that Kotack was not a credible witness. Discrepancies in what Kotack

said before the hearing and her testimony during the hearing led the ALJ to question her credibility. The ALJ wrote:

> The claimant was asked to describe an average day, and she responded that she took care of personal needs, including taking a shower, brushing her teeth, washing her hair, and dressing. She also stated that she walked and exercised. The claimant [later] testified that she could not exercise because she could not walk, and her daughters washed her hair. Her testimony is inconsistent with statements made by her earlier. She also testified that she grocery shopped with her daughters, played with the dog, watched the news on television, and read the newspaper. The claimant's activities are consistent with sedentary work.
>
> In January 2002 hospital records indicate that the claimant was "not truthful." The claimant acknowledged that she lied about having taken classes in psychology because she was trying to find a job. The claimant's acknowledgement of lying in regards to getting a job supports a conclusion that she is not credible.

(Tr. 18). Here, the ALJ noted that Kotack's testimony was not consistent with the testimony of the medical experts and the RFC assessment. Credibility determinations, such as that made by the ALJ in this case, are generally within the province of the ALJ to make. *See Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994) ("In sum, the ALJ 'is entitled to determine the credibility of medical experts as well as law witnesses and weigh their opinions accordingly.'") (quoting *Scott v. Heckler*, 770 F.2d 484, 485 (5th Cir. 1985)). Given the ALJ's supported and reasoned credibility determination, which will not be disturbed on appeal, the subjective evidence factor also weighs in favor of the ALJ's decision.

### 4. Plaintiff's Educational Background, Age, and Work History

The final element to be weighed is the claimant's educational background, work history, and present age. A claimant will be determined to be under disability only if the claimant's physical or mental impairments are of such severity that she is not only unable to do her previous work, but cannot, considering her age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

The record shows that Kotack is now fifty-six years old, has a tenth grade education, is a native of Poland, and has past work experience as an insurance clerk, as a waitress, and as a salesperson. (Tr. 87-94, 307-08). The ALJ determined that Kotack has an RFC sufficient to perform sedentary work. (Tr. 18-19). In determining Kotack's RFC, the ALJ concluded that Kotack's testimony regarding her inability to perform sedentary work was not credible and that Dr. Stafford's opinion that she was not able to work was outweighed by objective medical facts, expert testimony, and Dr. Stafford's own opinion that Kotack's ailments were significantly improving (Tr. 18-19). The vocational expert testified that Kotack has experience in a wide range of work levels from medium and skilled, to sedentary and semi-skilled, stating:

> [t]he claimant's past work from the record and testimony [shows] she has worked as a waitress. This would be done at a light exertional level and would be defined as semi-skilled. She also has work as a cellular pager sales person. This would be work done at a light exertional work level and would be defined as skilled work. From her testimony today she has also worked as a wine wholesale person. This would be work done on a medium exertional work level and would be defined as skilled work. And finally she has worked as an insurance clerk, this would be done at a sedentary work level and would be defined as semi-skilled work.

(Tr. 340-41). The vocational expert went on to say that Kotack "could do all past work, except the wine wholesales salesperson." (Tr. 341). Dr. Janese, a medical expert, further testified that Kotack could perform light work. (Tr. 330). The ALJ, however, determined that Kotack was capable only of performing at a sedentary level. (Tr. 18-19). Because one of Kotack's past jobs within the last fifteen years was at the sedentary level, the ALJ determined that Kotack was able to perform her past relevant work, and was therefore not disabled. (Tr. 18).

Kotack argues that the ALJ should not have determined that she could perform past relevant work, and should then have moved to step five and applied the Medical-Vocation Rule 201.02. However, as shown above, the ALJ had substantial evidence to support her findings through step four.

Furthermore, if a determination is made at any step that a claimant is either "disabled" or "not disabled" then the evaluation is to end at that step. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987); *Leggett*, 67 F.3d at 564.  Thus, the ALJ followed the applicable standards of law and had substantial evidence to support her decision at step four.

### VI. CONCLUSION

Considering the record as a whole, the undersigned is of the opinion that the ALJ and the Commissioner properly used the guidelines propounded by the Social Security Administration, which directs a finding that Kotack was "not disabled."  As such it is ORDERED that Defendant's Motion for Summary Judgment (Document No. 10) is GRANTED, Plaintiff's Motion for Summary Judgment (Document No. 9) is DENIED, and the decision of the Commissioner is AFFIRMED.

Signed at Houston, Texas, this 4th day of Augsut, 2006.

*Frances H. Stacy*
Frances H. Stacy
United States Magistrate Judge